# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**Stevie Belle, Jr.**

    *Plaintiff*,

    v.

**Williams, Rush & Associates, LLC, and Sean Williams,**

    *Defendants*.

Case No: _____

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

**COMES NOW** the Plaintiff, **Stevie Belle, Jr.** ("**Mr. Belle**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **Williams, Rush & Associates, LLC** ("**WRA**"), **Sean Williams** ("**Williams**") (collectively, "**the Defendants**") and states as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Mr. Belle against WRA for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* ("**FDCPA**"), the Florida Consumer Collection Practices Act, Section 559.55, Florida Statutes *et. seq.* ("**FCCPA**").and the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2. This Court has jurisdiction of Mr. Belle's FDCPA claims pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

Page **1** of **22**

3. This Court has jurisdiction of Mr. Belle's FCRA claim pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction for Mr. Belle's state law claim pursuant to 28 U.S.C. § 1367 and Section 559.77(1) Florida Statutes.

5. Venue is proper in Middle District of Florida, pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

6. **Mr. Belle** is a natural person residing in Valrico, Hillsborough County, Florida and is a "consumer" as defined by the FDCPA, 15 U.S.C. §1692a(3), the FCCPA, Section 559.55(8), Florida Statutes, and the FCRA, 15 U.S.C. §1681a(c).

7. **WRA** is a Texas limited liability corporation with a primary business address of 4144 N. Central Expressway, Ste. 945, Dallas, TX 75204.

8. WRA is registered as a Foreign Corporation in the State of Florida; its registered agent is **Northwest Registered Agent, LLC, 3030 N. Rocky Point Dr., Suite 150A, Tampa, FL 33607.**

9. **Williams** is the managing member and founder of WRA, and, according to his LinkedIn profile, has been involved in the collections industry since 2003.

10. Williams is involved in the day-to-day operations of WRA and is the individual responsible for the determination of, and implementation of, the policies and procedures of WRA.

11. The Defendants are "debt collectors" within the meaning of the FDCPA and FCCPA, 15 U.S.C. § 1692a(6) and Section 559.55(7), Florida Statutes, respectively, in that the Defendants use an instrumentality of commerce, including the U.S. mail and / or telephone, interstate and within the state of Florida, for their business, the principal purpose of which is the collection of debts, and/or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12. WRA was licensed to collect consumer debts and held a Florida Consumer Collection Agency License ("**CCA License**") issued by the Florida Office of Financial Regulations, license number CCA9903284; the CCA License expired on December 31, 2014 and has not been renewed or reinstated as of the date of this filing. **SEE PLAINTIFF'S EXHIBIT A.**

13. Section 559.553(1), Florida Statutes, states: "A person may not engage in business in this state as a consumer collection agency or continue to do business in this state as a consumer collection agency without first registering in accordance with this part, and thereafter maintaining a valid registration."

## FACTUAL ALLEGATIONS

14. Supposedly, Mr. Belle incurred a debt related to tuition expenses at Tampa Truck Driving School ("**Tampa Truck**") in Tampa, Florida (the "**alleged Debt**" or "**Debt**").

15. The Debt arose from personal educational expenses, and therefore meets the definition of "debt" under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

16. Around November 1, 2019, Tampa Truck hired WRA to collect the Debt, or otherwise assigned the Debt to WRA for collection.

### Mr. Belle's Dispute of the Debt

17. Mr. Belle disputes owing the Debt.

18. On or about December 19, 2019, a WRA collection agent called Mr. Belle on his cell phone.

19. The WRA collection agent stated that she was calling from WRA, and that the call was an attempt to collect a debt.

20. Mr. Belle's Caller ID showed the call was coming from 813-320-0316; which is a phone number owned or utilized by WRA.

21. Calling 813-320-0316 on December 27, 2019, resulted in an automated greeting stating, in part, "Thank you for calling Willams, Rush and Associates…"

22. The WRA agent stated that she needed a $700 payment that same day; otherwise, WRA would cause Mr. Belle's wages to be garnished immediately.

23. The WRA agent also claimed that WRA could cause Mr. Belle's driver's license to be suspended for non-payment of debt, and WRA would also cause a negative entry to appear on his "Drive-A-Check" report from HireRight.

24. More commonly called a "DAC report," the Drive-a-Check tool by HireRight is utilized by companies which employ professional drivers to screen prospective applicants.

25. The DAC report provides details on drug and alcohol problems, accidents, length of time employed in professional driving, eligibility for rehire with past employers, and other relevant information that is dispositive towards hiring.

26. A great number of trucking companies and other entities which employ professional drivers utilize DAC reports to pre-screen prospective applicants, and therefore negative information on an applicant's DAC report creates significant impediments to obtaining future employment.

27. A DAC report does not, however, contain information about consumer debts or loans.

28. Therefore, the debt WRA's agent sought to collect from Mr. Belle could never be placed on his DAC Report.

29. Beyond this, WRA is not a trucking company, and therefore cannot furnish any information to HireRight's DAC database.

30. At no point did WRA intend, much less have any ability to, report any information to HireRight's DAC database.

31. The phrase "DAC report" is not well known to the general population, but it is critically important to employees within the professional driving industry.

32. The Defendant's intentionally used this industry-specific and relativity obscure terminology in order to frighten consumer's like Mr. Belle into paying the debt.

33. WRA empty threats to report negative DAC information were simply a ruse to scare consumers like Mr. Belle into paying debts.

34. Many consumers, and especially an unsophisticated one, would be cajoled into paying a debt, even if disputed, if a debt collector appeared to have the knowledge, ways and means to electronically blacklist them from being able to work in the industry again.

35. WRA also had no ability, nor intention, to cause Mr. Belle's driver's license to be suspended.

36. No Florida law allows for a consumer's driver's license to be suspended for an unsecured consumer credit transaction like a private school's tuition.

37. The Defendants thus intentionally and willfully made false representations about what legal rights could be invoked and enforced in the event of nonpayment.

38. The Defendants are not attorneys and had no authority, nor intention, of suing Mr. Belle for any alleged unpaid debt.

39. Yet, WRA's name – Williams, Rush & Associates – effectively mimics the nomenclature commonly used by law firms, and would *sound like* a law firm to an unsophisticated consumer, especially when accompanied by corresponding threats of wage garnishment, etc.

40. In reaction to Defendants' false threats of wage garnishment, negative DAC reporting, and driver's license suspension, Mr. Belle provided WRA with his debit card number and agreed to make a partial payment in the near future to put a "stop" to any of the verbalized threats.

41. Later, Mr. Belle called back WRA and stated he no longer wished to make payment, thereby expressly rescinded the authorization to charge his debit card.

42. In response to Mr. Belle's revocation, WRA's agent became audibly angry and said, "Oh, so you want us to garnish your wages and suspend your license then? We'll be filing this tomorrow!"

43. In December 2019, WRA reported the Debt to multiple consumer credit reporting agencies ("**CRAs**"), including Experian and Trans Union.

44. Mr. Belle became aware of WRA's reporting of the Debt when he received an alert from CreditKarma, a credit-monitoring application.

45. Mr. Belle thereafter disputed the Debt to Experian, stating he did not owe the alleged Debt.

46. On information and belief, in response to Mr. Belle's dispute, Experian sent WRA an Automated Consumer Dispute Verification ("**ACDV**") request and asked WRA to make a reasonable investigation into the dispute.

47. Upon receipt of the ACDV request, WRA knew or should have known that Mr. Belle disputed the Debt.

48. The ACDV was sent via e-OSCAR, an online system used by the CRAs to communicate with furnishers of data, including debt collectors.

49. When responding to an ACDV through e-OSCAR, the person sending the response must electronically sign to confirm as follows:

> [b]y submitting this ACDV, you certify that you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect the changes noted.

50. WRA returned the ACDV to Experian, verifying it had completed its investigation and that all of its information was accurate. **SEE PLAINTIFF'S EXHIBIT B.**

51. The ACDV contains a section labeled "Compliance Condition Codes," wherein a furnisher of data to a CRA can instruct the CRA to report a debt as "disputed by consumer."

52. On information and belief, WRA left the Compliance Condition Codes Section blank in its response to Experian's ACDV.

53. Without the appropriate Compliance Condition Code, Trans Union will not know to update its report of a debt to reflect its disputed status.

54. WRA thus failed to inform Experian the Debt was "disputed."

55. WRA also failed to make a reasonable investigation into Mr. Belle's dispute of the Debt. Any reasonable investigation would have concluded, at the minimum, that WRA's report was not complete and was thus inaccurate without reflecting that the Debt was "disputed by consumer."

56. Upon information and belief, Williams, intentionally, or with reckless disregard for consumers' rights, has failed to set a policy ensuring WRA reports disputed debts as disputed and as a result of this failure, WRA does not update its reports of disputed debts to the CRAs to reflect a "disputed" status.

57. Indeed, the Defendants have been sued multiple times for failing to report disputed debts to the CRAs as disputed.

58. A debt collector must report any account it knows to be disputed as "disputed;" the FDCPA does not give debt collectors the authority to determine unilaterally whether a dispute has merit. *Semper v. JBC Legal Group*, 2005 WL 2172377 (W.D. Wash. Sept. 6, 2005).

59. The vast majority of credit score calculations disregard collection agency tradelines reported as "disputed."

60. WRA's failure to report the Debt as disputed therefore caused damage to Mr. Belle's credit reports and scores.

61. The Defendants had no right to determine on their own whether the dispute had merit or not; the FDCPA requires a debt collector to communicate a debt is disputed, and 1692e(8) "does not require an individual's dispute be valid or even reasonable. Instead, the plaintiff must simply make clear that he or she disputes the debt. *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010) ("[A] consumer can dispute a debt for 'no reason at all ….'"

62. The failure to properly report a disputed debt as disputed creates a concrete injury-in-fact because the failure to disclose this information affects credit scores, meaning Mr. Belle suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

63. WRA's failure to report the Debt as disputed also prevented third parties who received Mr. Belle's credit report from learning that Mr. Belle disputed the Debt, even though it was his right to have such information communicated to them.

64. On or around Friday, December 27, 2019, WRA called Mr. Belle on his cell phone and stated it had received a dispute about the Debt, demanded to know why he was disputing it, and that the debt could not be disputed because Mr. Belle "owed" it.

65. Mr. Belle responded that he had now had legal counsel who would represent him in the matter, and gave the agent the contact information for the undersigned law firm.

66. WRA's agent demanded to know why Mr. Belle had hired an attorney instead of paying the debt.

### WRA's Addition of Interest or Fees to the Debt

67. When ATA College initially placed the Debt for collection with WRA, it alleged $2,384 was owed. **SEE PLAINTIFF'S EXHIBIT C.**

68. However, in both its June and August reports to the CRAs, WRA reported that $2,821 was owed, indicating that WRA added $500 of additional fees and / or costs. *Id.*

69. No contract or agreement exists between Mr. Belle and ATA College which would authorize $500 of collection fees on a $2,384 alleged debt.

70. No Florida statute authorizes the addition of interest and / or fees on an unsecured loan, absent written agreement to the contrary.

71. The alleged Debt has not been reduced to judgment.

72. WRA thus lacked any basis in contract or law for the addition of $500 in interest and / or fees to the alleged Debt, but did so anyway.

## Additional Statutory Violations

73. At all times relevant, the Defendants lacked a valid Florida CCA License, a prerequisite to legally collect consumer debts in Florida.

74. Defendants attempted to collect the Debt, which originated from a college in Tampa, Florida, after it was attended by a Florida resident, despite lacking a valid Florida CCA License.

75. WRA did not mail, within five days of initial communication, written notice containing: (1) the amount of the Debt; (2) the name of the creditor to whom the Debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the Debt, or any portion thereof, the Debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the Debt, or any portion thereof, is disputed, the debt collector will obtain verification of the Debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; or, (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

76. Mr. Belle has hired the aforementioned law firm to represent him in this matter and is obligated to pay its reasonable fees.

**COUNT I**
**DEFENDANTS' VIOLATIONS OF THE FDCPA**

77. Mr. Belle adopts and incorporates paragraphs 1 – 76 as if fully restated herein.

78. The Defendants violated **15 U.S.C. § 1692e and 1692e(10)** by making false and/or deceptive representations in connection with the collection of a debt and/or to obtain information about a consumer when WRA:

(a) reported a debt to the CRAs it knew was disputed without disclosure of the dispute;

(b) claimed it could add $500 of fees to a debt without any contractual or legal basis, and reported that these additional $500 of fees were owed;

(c) claimed it could collect a debt which originated in Tampa, Florida from a Florida resident without being legally licensed to collect debt in Florida;

(d) told Mr. Belle he could not dispute a debt and was required to pay – prior to the 30-day validation period expiring;

(e) claimed that they could cause a negative entry to appear on Mr. Belle's DAC report, when the Defendants had no such ability or intention; and

(f) claimed in a phone call that they could cause wage garnishment to be initiated, without due process.

79. The Defendants violated **15 U.S.C. § 1692e(2)(a)** when they made a false representation about the character, amount, or legal status of the Debt by:

(a) reporting a debt to the CRAs it knew was disputed without disclosing the dispute;

(b) claimed it could add $500 of fees to a debt without any contractual or legal basis, and reported that these additional $500 of fees were owed;

(c) claimed it could collect a debt which originated in Tampa, Florida from a Florida resident without being legally licensed to collect debt in Florida;

(d) told Mr. Belle he could not dispute a debt and was required to pay – prior to the 30-day validation period expiring;

(e) claimed that they could cause a negative entry to appear on Mr. Belle's DAC report, when the Defendants had no such ability or intention;

(f) that the Defendants could cause Mr. Belle's Florida driver's license to be suspended for non-payment of an unsecured debt; and

(g) claimed in a phone call that they could cause wage garnishment to be initiated, without due process.

80. The Defendants violated **15 U.S.C. § 1692e(5)** when they, in phone calls and via their website, threatened action not intended to be taken, e.g. legal action to collect the Debt and garnishment of wages to effect validation of a debt, wage garnishment without due process, and the appearance of a negative entry on a DAC report.

81. The Defendants violated **15 U.S.C. § 1692e(5)** when they claimed they could cause Mr. Belle's driver's license to be suspended for non-payment of an unsecured debt.

82. The Defendants violated **15 U.S.C. § 1692e(8)** when WRA, pursuant to Williams' policies and under his authority, communicated credit information known to be disputed without disclosure of the dispute in its December 2019 report to Experian.

83. The Defendants violated **15 U.S.C. § 1692f** when they used unfair and/or unconscionable means to collect or attempt to collect a debt, when Williams, as managing member of WRA, instructed his agents to threaten negative reporting to DAC – something Williams knows is impossible for WRA to actually do, yet nonetheless effective in collecting debt, since the consumer would believe his reputation would be permanently tarnished by such a report.

84. The Defendants violated **15 U.S.C. § 1692f** when they used unfair and/or unconscionable means to collect or attempt to collect a debt, when Williams, as managing member of WRA, instructed his agents to threaten wage garnishment, legal action, and driver's license suspension, despite knowing that WRA has zero ability to carry out such threats; nonetheless, Williams knows the mere threat of such repercussions is an effective crowbar to pry payment from a consumer.

85. The Defendants also violated **15 U.S.C. § 1692f(1)** by adding $500 of "fees" to a debt without justification in contract or law, and by collecting debt for a business with a location in Tampa, Florida, regarding a Florida resident, without the legally-required license enabling them to do so.

86. The Defendants violated **15 U.S.C. § 1692g(a)** when they failed to mail written notice to Mr. Belle within five days of initial communication, stating:

   (a) the amount of the Debt;

  (b) the name of the creditor to whom the Debt is owed;

  (c) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the Debt, or any portion thereof, the Debt will be assumed to be valid by the debt collector;

  (d) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the Debt, or any portion thereof, is disputed, the debt collector will obtain verification of the Debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; or,

  (e) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

87. The Defendants' actions render them liable for the above-stated violations of the FDCPA, and Mr. Belle is therefore entitled to statutory damages not to exceed $1,000.00 as well as other relief.

**WHEREFORE,** Mr. Belle respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, and for her as follows:

 a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

 b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

 c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

 d. Such other relief that this Court deems just and proper.

## COUNT II
## WRA'S VIOLATIONS OF THE FCRA

88. Mr. Belle adopts and incorporates paragraphs 1 – 76 as if fully stated herein.

89. WRA violated 15 U.S.C. § **1681s-2(b)** when it failed to make a reasonable reinvestigation after receiving notice of a dispute from a CRA, Experian, as evidenced by the fact that any reasonable reinvestigation would have revealed that the information was disputed by Mr. Belle and thus its reports needed to be updated to reflect Mr. Belle's dispute.

90. WRA's conduct was willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA as a furnisher of information to nationwide CRAs, since its policies were to never report disputed debts as disputed, and its policies could reasonably be foreseen to cause harm Mr. Belle.

91. As a result of its conduct, WRA is liable to Mr. Belle pursuant to the FCRA for statutory damages of up to $1,000 for *each occurrence*, and other relief.

**WHEREFORE,** Mr. Belle respectfully requests that this Honorable Court enter judgment against WRA and for her as follows:

    a. The greater of statutory damages of **$1,000.00** per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A) or Mr. Belle's actual damages for loss of credit opportunities and related economic and non-economic injuries pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1);

    b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

    c.      Such other relief that this Court deems just and proper

## COUNT III
### DEFENDANTS' VIOLATIONS OF THE FCCPA

92. Mr. Belle adopts and incorporates paragraphs 1 – 76 as if fully restated herein.

93. The Defendants violated Section **559.72(9)**, Florida Statutes, when they asserted rights which do not exist, which the Defendants knew did not exist, specifically: (1) the right to collect a consumer debt in Florida without first acquiring a CCA License from the Florida Office of Financial Regulation, (2) the right to summarily cause wage garnishment to occur, without due process, (3) the right to cause Mr. Belle's driver's license to be suspended, and (4) the right to report negative information to DAC, which WRA has no legal ability to do.

94. The Defendants' actions were willful and intentional in that they were part of a strategy designed to maximize their profits at the expense of the consumer and his family.

95. By their conduct, the Defendants are liable for the above-stated violations of the FCCPA.

**WHEREFORE,** Mr. Belle respectfully requests this Honorable Court enter judgment against the Defendants, jointly and severally, and otherwise solely, for:

    a.      Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

    b.      Actual damages pursuant to Section 559.77(2), Florida Statutes;

    c.      Punitive damages for the Defendants' blatantly illegal and reprehensible conduct pursuant to Section 559.77(2), Florida Statutes;

d. Injunctive relief preventing the Defendants from attempting to collect the alleged debt from Mr. Belle pursuant to Section 559.77(2), Florida Statutes;

e. Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

f. Such other relief that this Court deems just and proper.

### JURY TRIAL DEMANDED

Mr. Belle demands a jury trial on all issues so triable.

Respectfully submitted this February 4, 2020, by:

/s/ *Thomas M. Bonan*
**Thomas M. Bonan, Esquire.**
**FBN: 118103**
**SERAPH LEGAL, P. A.**
2002 E. 5th Ave., Suite 104
Tampa, FL 33605
Tel: 813-321-2347
Fax: 855-500-0705
Tbonan@SeraphLegal.Com
Counsel for Plaintiff